STATE, *ex rel.* WILLIAM W. VARS, v. W. V. KNOTT, State Treasurer and Insurance Commissioner.

184 So. 752.

Opinion Filed November 28, 1938.

*Guyte P. McCord, Nicholas S. Kiefer* and *Walter F. Dodd,* (Chicago, Ill.) for Relator;

*Cary D. Landis,* Attorney General, *Tyrus A. Norwood,* Assistant Attorney General, *Waller & Meginniss* and *Chas. H. Spitz,* for Respondent.

TERRELL, C. J.—Relator, William W. Vars, having been refused an insurance agent's license by W. V. Knott, Insurance Commissioner of the State of Florida, this Court on his (Vars') petition, issued its alternative writ of mandamus directed to said Insurance Commissioner commanding him

to issue to said Vars insurance agents' licenses to transact business in this State on behalf of the insurance companies named in the petition, to-wit: Hardware Dealers Mutual Fire Insurance Company, Hardware Mutual Fire Insurance Company of Minnesota, Minnesota Implement Mutual Fire Insurance Company, Hardware Mutual Casualty Company, or to show cause why he refuses so to do.

The Insurance Commissioner moves to quash the alternative writ because the Relator, Vars, did not bring himself within the applicable provisions of Section One of Chapter 17069, Acts of 1935, and other applicable provisions of the insurance laws of this State relating to the issuance of such licenses. Relator counters with the contention that Chapter 17069, Acts of 1935, is violative of Sections One and Twelve, Declaration of Rights, Constitution of Florida, and the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and is accordingly ineffective to require compliance with its provisions.

Section One of Chapter 17069, Acts of 1935, is as follows:

"An insurance agent is hereby defined to be any person who solicits, negotiates, or effects contracts of insurance, surety, or indemnity on behalf of any insurer, on a strictly commission basis; or any member of a copartnership, or association, or any stockholder, officer or agent of a corporation, who solicits, negotiates, or effects contracts of insurance, indemnity or surety, where said copartnership, association or corporation lawfully holds an agency appointment from any insurer, to solicit, negotiate or effect contracts of insurance, surety or indemnity on a strictly commission basis, on its behalf and no person, copartnership, association or corporation employed by an insurer on a salary basis or representing any insurer in any capacity except primarily to solicit, negotiate, or effect contracts of insurance, surety,

or indemnity, on a strictly commission basis, shall be deemed or held to be an insurance agent or solicitor; Provided, that nothing in this section shall prohibit the granting of licenses to general agents of casualty and surety companies working on a strictly commission basis."

The feature of the act which is alleged to be in violation of the State and Federal Constitution is that part limiting insurance agents to those who solicit, negotiate, or effect contracts of insurance, surety, or indemnity strictly on a commission basis. Sick and funeral benefit companies and life insurance companies or associations are exempt from the terms of the Act. Section Eight, Chapter 13663, Acts of 1929.

It is not contended by Relator that the business of insurance is not subject to regulation and control by the legislature but the point of cleavage between Relator and Respondent is that there are limits beyond which the legislature cannot go in exercising its power to regulate such businesses and that Section One of Chapter 17069, Acts of 1935, surpasses the allowable limit permitted.

This Court is committed to the doctrine that the power of the legislature to regulate professions and businesses is not absolute but is subject to reasonable restrictions. Riley v. Sweat, 110 Fla. 362, 149 So. 48; Sweat v. Turpentine and Rosin Facots Inc., 112 Fla. 428, 150 So. 617; Perry Trading Company v. City of Tallahassee, 128 Fla. 424, 174 So. 854; Adams v. Tanner, 244 U. S. 590, 37 Sup. Ct. 662, 61 L. Ed. 1336. The foregoing and cases of like import are relied on by Relator to support his contention.

All of these cases treat legislative regulations that directly or indirectly cut off the complainants inherent right to engage in the business brought in question or placed limitations and burdens on the right to engage therein which amounted to a prohibition. This seems to be the acid by

which the constitutional validity of such regulations must be determined. Regulations of this character grow out of the exercise of the police power and must bear some relation to the health, safety, morals, or welfare of those affected.

Strong reliance is placed by Respondent on Harrison v. Hartford Steam Boiler Insurance Company, 183 Ga. 1, 187 S. E. 648 and 301 U. S. 459, 57 Sup. Ct. 838, 81 L. Ed. 1223; to uphold the act here brought in question. These cases involved the interpretation of a Georgia statute very similar to the act under review in that it applied to the same class of insurance and provided that it must be written by resident agents. It was however different from the act under review in that it exempted all salaried employees of insurance companies doing business in the State of Georgia and included all agents of mutual insurance companies however compensated.

The Supreme Court of Georgia upheld the validity of the Act, against all assaults but the Supreme Court of the United States reversed the Supreme Court of Georgia holding that the Act unreasonably discriminated between salaried employees of mutual insurance companies and similar employees of stock companies. This basis for holding the Georgia Act bad did not exist in the Act under review and consequently the latter decision cannot be said to control the instant case.

The Federal Court also defined the equal protection clause of the fourteenth amendment to mean that the rights of all persons must rest upon the same rule under similar circumstances and that it applies to the exercise of all the powers of the state which can affect the individual or his property including the power of taxation. It does not however forbid classification and the power of the State to classify for purposes of taxation is of wide range and flexibility, provided always that the classification must be reasonable, not

arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. Mere difference is not enough; the attempted classification must rest upon some difference which bears a reasonable and just relation to the Act in respect to which the classification is proposed and can never be made arbitrarily and without any such basis. Kentucky Railroad Tax Cases, 115 U. S. 321, 6 Sup. Ct. 57, 29 L. Ed. 414; Magoun v. Illinois Trust and Savings Bank, 170 U. S. 283, 18 Sup. Ct. 584, 42 L. Ed. 1037; County of Santa Clara v. Southern Pac. R. Co., 18 Fed. 385; Royster Guano Co. v. Virginia, 253 . S. 412, 40 Sup. Ct. 560, 64 L. Ed. 989; Airway Electric Appliance Corp. v. Day, 266 U. S. 71, 45 Sup. Ct. 12, 69 L. Ed. 169; Schlesinger v. Wisconsin, 270 U. S. 230, 46 Sup. Ct. 260, 70 L. Ed. 557.

The Act under review, unlike the Georgia Act, treats mutuals and stock companies writing fire and indemnity insurance alike. Its main purpose when read in *pari materia* with cognate acts, such as Sections 6224 and 6235, Compiled General Laws of 1927, was to limit the writing of the class of insurance described to resident agents, compensated on a commission basis. There is no constitutional objection to compensation on this basis nor to the fact that writing the insurance was limited to resident agents. As a policy, it may appear to some narrow and short sighted and even obnoxious but this alone does not render it unconstitutional.

Relator attempts to bring himself within the constitutional inhibitions claimed by alleging that the effect of the Act under review is to prevent him from engaging in a useful legitimate business, that is to say, writing insurance contracts as a salaried agent. He also alleges that the Act in effect destroys a useful and legitimate method of conducting business, that it requires the business of writing insurance to be

conducted in a less efficient and more expensive manner without in any way protecting the public safety, welfare, morals, or health of those affected.

It may be that salaried agents are, as a rule, more efficient and capable of advising insurance clients as to the technique of the insurance business and as to the status and extent of the risk they are protecting; it may be that the cost of insurance will run higher under the system proposed, but these are questions of policy with which the courts are not concerned. Relator is certainly not excluded from writing insurance under the terms of the Act nor is the impediment imposed, such as will unduly hamper him in writing insurance. True, he is required to write on a commission basis but this is far from excluding him from the business and so far as the record discloses, insurance written on a commission basis is just as effective as that written on a salary basis.

Courts cannot protect those affected against unwise or even foolish legislation unless some provision of organic law is violated. For this reason, we are frequently called on to uphold acts that we would not have voted for had we been members of the legislature that enacted them. The Act complained of does not cut off or unduly hamper Relator's right to engage in the business of writing insurance and is for that reason not offensive to the rule pronounced in the cases relied on.

The fact that casualty and life insurance companies are separately classified in the Act is not material. These are different kinds of insurance governed by different rules with different objectives and therefore susceptible of a different basis of classification. Unless it be conclusively shown that the Act is in derogation of some clear constitutional guaranty, the question of whether it is in the interest of the

, public welfare is one for the legislature to determine and in the determination of which it has a liberal discretion.

We have examined carefully every contention of Relator in the light of the Constitutional provisions relied on and our conclusion is that all of them go to questions of policy that were concluded by the legislature and with which we are powerless to interfere. We pronounce the Act immune to the assault made on it.

The motion to quash is accordingly granted.

It is so ordered.

WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.

THOMAS, J., not participating.