

FILED

May 18 2020, 10:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Kathleen Cullum
Indianapolis, Indiana

Megan Stuart
Bloomington, Indiana

Barbara J. Baird
Indianapolis, Indiana

Lynly S. Egyes
Brooklyn, New York

Shawn Meerkamper
Oakland, California

Andres R. Holguin-Flores
Thomas A. Saenz
Los Angeles, California

ATTORNEYS FOR APPELLEE

Thomas M. Fisher
Solicitor General

Aaron T. Craft
Section Chief, Civil Appeals

Kian J. Hudson
Deputy Solicitor General

Benjamin M. L. Jones
Julia C. Payne
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE NAME CHANGE
OF JANE DOE, et al.,

*Appellants-Petitioners.*

May 18, 2020

Court of Appeals Case No.
19A-MI-2166

Appeal from the Marion Circuit
Court

The Honorable Sheryl Lynch,
Judge

**Altice, Judge.**

## Case Summary

Jane Doe and R.A.C. (collectively, Petitioners) each filed a petition with the trial court to change their legal name pursuant to Ind. Code chapter 34-28-2. In each case, the trial court found that the petition was made in good faith and not for fraudulent or unlawful purposes. The court indicated that it could easily grant the petitions if only Petitioners were United States citizens. Believing it was constrained by I.C. § 34-28-2-2.5(a)(5), however, the trial court denied the petitions.

In this consolidated appeal, Petitioners argue that the trial court erred when it interpreted I.C. § 34-28-2-2.5(a)(5) to require proof of citizenship as a prerequisite to obtaining a name change. They direct us to *In re Resnover*, 979 N.E.2d 668 (Ind. Ct. App. 2012), in which another panel of this court held that the language of subsection 2.5(a) carries directory, rather than mandatory, intent and, thus, where a document on the statutory list "cannot be submitted to

the court, the petitioner is relieved from the necessity to produce the documents." *Id*. at 676. Further, Petitioners contend that the trial court's interpretation renders the statute unconstitutional on several grounds, including equal protection.

[3] The State, upon our invitation, intervened in this appeal to address the constitutionality of I.C. § 34-28-2-2.5(a)(5), which the State argues unambiguously requires proof of United States citizenship. While the State contends that the statute is facially valid, it concedes that as a matter of equal protection, "the citizenship requirement is unconstitutional as applied to these Petitioners because heightened scrutiny applies to legal permanent residents and childhood arrivals." *Appellee's Brief* at 12.

[4] Constitutional issues abound here but, counseled by the doctrine of judicial restraint, we do not reach them. Consistent with caselaw and the framework of the name change statutes, we do not interpret I.C. § 34-28-2-2.5(a)(5) to require that a petitioner be a United States citizen in order to obtain a statutory name change.

[5] We reverse and remand.

## Facts & Procedural History

[6] Petitioners are transgender men who were born in Mexico and brought to the United States by their respective families around the age of five. Both are residents of Marion County, Indiana, but not United States citizens. R.A.C.

received from the United States Department of Homeland Security a grant of deferred action under the Deferred Action for Childhood Arrivals (DACA) initiative and has a pending petition for a United States visa. Doe also received DACA status and then, in 2016, became a lawful permanent resident of the United States.

[7] R.A.C. and Doe individually filed with the Marion Circuit Court verified petitions for change of name on December 7, 2018 and March 1, 2019, respectively. They also provided supporting briefs regarding the constitutionality and application of I.C. § 34-28-2-2.5(a)(5).

[8] The trial court heard Doe's amended petition on May 15, 2019. At the conclusion of the evidentiary hearing, the court indicated that it found Doe's testimony sincere, truthful, and extremely credible. The court commended counsel on the thorough briefing of the legal issues at hand – both statutory and constitutional – and then took the matter under advisement.

[9] On July 10, 2019, the trial court heard R.A.C.'s petition. Based on the testimony and documentary evidence submitted in support of the petition, the trial court indicated at the conclusion of the hearing that R.A.C. would be undoubtably entitled to a legal name change if he were a United States citizen. The sole issue left for the trial court was the effect of R.A.C.'s inability to provide proof of citizenship. The court took the legal issue under advisement.

[10] The trial court issued orders in August 2019 denying the petitions for name change based on each petitioner's inability to provide proof of United States

citizenship under I.C. § 34-28-2-2.5(a)(5). Doe's order included, among others, the following findings:

> 13. Petitioner presented overwhelming, compelling testimony regarding numerous incidents where his lack of a name change … has been detrimental to Petitioner and his wife and child. Petitioner's testimony also met the burden of harm to Petitioner as a transgender male.

> 14. The Court finds Petitioner's request for the change of name … is made in good faith, and not made for fraudulent or unlawful purposes.

> ****

> 16. The Court finds that if the Petitioner were a United States Citizen, the Court could easily with DACA status grant the request for Name Change.

*Appendix* at 12-13. R.A.C.'s order contained similar findings. However, because the trial court concluded that I.C. § 34-28-2-2.5(a)(5) requires proof of United States citizenship and determined that it could not render the requirement unconstitutional, the court denied the requested name changes.

[11] Petitioners each timely appealed. On November 22, 2019, the appeals were consolidated pursuant to Ind. Appellate Rule 38(B). Petitioners then filed a joint appellate brief and appendix, in which they argued that they are statutorily entitled to a name change regardless of their citizenship status and that the trial court's interpretation of I.C. § 34-28-2-2.5(a)(5) would render the statute unconstitutional on several grounds. On February 18, 2020, pursuant to Ind.

Code § 34-33.1-1-1, this court issued an order notifying the Attorney General that the constitutionality of a statute had been called into question and granting the Attorney General permission to intervene on behalf of the State as an appellee. The State intervened and timely filed a brief, in which it argued that the statutory provision at issue is facially constitutional but unconstitutional as applied. Petitioners filed a reply brief, arguing that this court can and should construe the statute to avoid unconstitutional results.

## Standard of Review

Statutes are presumptively constitutional and, therefore, we must resolve all reasonable doubts concerning a statute in favor of constitutionality. *State v. Thakar*, 82 N.E.3d 257, 259 (Ind. 2017). The doctrine of judicial restraint requires a reviewing court to ascertain whether a construction of the statute at issue is "fairly possible" such that a constitutional question may be avoided. *Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 107 (Ind. 1998) ("constitutional issues are to be avoided as long as there are potentially dispositive statutory or common law issues still alive").

Statutory interpretation is a question of law and is subject to de novo review on appeal. *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016).

> Our first task when interpreting a statute is to give its words their plain meaning and consider the structure of the statute as a whole. *West v. Office of Indiana Sec'y of State*, 54 N.E.3d 349, 353 (Ind. 2016). We "avoid interpretations that depend on selective

reading of individual words that lead to irrational and disharmonizing results." *Id*. at 355 (internal quotation omitted). As we interpret the statute, we are mindful of both "what it 'does say' and what it 'does not say.'" *Day v. State*, 57 N.E.3d 809, 812 (Ind. 2016) (quoting *State v. Dugan*, 793 N.E.2d 1034, 1036 (Ind. 2003)). To the extent there is an ambiguity, we determine and give effect to the intent of the legislature as best it can be ascertained. *Moryl v. Ransone*, 4 N.E.3d 1133, 1137 (Ind. 2014). "[W]e do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result." *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015) (internal quotation omitted).

*Id*. at 1195-96. Further, statutes relating to the same general subject matter "should be construed together so as to produce a harmonious statutory scheme." *Klotz v. Hoyt*, 900 N.E.2d 1, 5 (Ind. 2009).

## Discussion & Decision

[14] I.C. § 34-28-2-2.5(a) provides:

> If a person petitioning for a change of name under this chapter is at least seventeen (17) years of age, the person's petition must include at least the following information:
>
> > (1) The person's date of birth.
> >
> > (2) The person's current:
> >
> > > (A) residence address; and
> > >
> > > (B) if different than the person's residence address, mailing address.
> >
> > (3) The person's valid:

(A) Indiana driver's license number;

(B) Indiana identification card (as described in IC 9-24-16) number; or

(C) Indiana photo exempt identification card (as described in IC 9-24-16.5) number.

(4) A list of all previous names used by the person.

**(5) Proof that the person is a United States citizen.**

(6) A statement concerning whether the person holds a valid United States passport.

(7) A description of all judgments of criminal conviction of a felony under the laws of any state or the United States that have been entered against the person.

(Emphasis supplied.). At first blush, the statute appears to require proof of United States citizenship before a name change may be granted. Such an interpretation, however, not only leads to constitutional problems – as acknowledged by the State – but is counter to the history of liberally allowing nonfraudulent name changes in Indiana and the overall framework of the name change statutes.

[15] At common law, a natural person has long been permitted to change his or her name without resort to any legal proceedings, as long as the name change does not interfere with the rights of others and is not done for a fraudulent purpose. *See Leone v. Commissioner*, 933 N.E.2d 1244, 1252 (Ind. 2010); *Petition of Hauptly*, 312 N.E.2d 857, 859-60 (Ind. 1974); *Resnover*, 979 N.E.2d at 672.

[16]     In 1852, the Indiana legislature statutorily authorized courts to effect a change of name. *Hauptly*, 312 N.E.2d at 859. Describing the statute as "quite simple", our Supreme Court held that the statutory procedure "merely provide[d] for an orderly record of the change of name in order to avoid future confusion" and did not abrogate – but rather supplemented – the common law. *Id*.; *see also Leone*, 933 N.E.2d at 1253. In *Hauptly*, the Court reversed the denial of a name change for a married woman who wished to change from her married name to her maiden name, explaining:

> [A]ny member of our society who wishes to make a public legal record of a name change[] may take advantage of the Indiana statute. The only duty of the trial court upon the filing of such a petition is to determine that there is no fraudulent intent involved. Once having so found, we hold that it is an abuse of judicial discretion to deny any application for a change of name under the statute.

312 N.E.2d at 860.

[17]     Over forty years later, and after amendments to the name change statutes in 2010 that included the addition of section 2.5, the Court reiterated that "*Hauptly* means that Indiana courts must grant a name change where no evidence of fraud exists" and indicated that "under the common law only a statutorily authorized court order gives legal sanction to a name change." *Leone*, 933 N.E.2d at 1253, 1254. In discussing common law and statutory name changes, the Court observed:

> While the courts have a unique power to certify a name change, Hoosiers still may refer to themselves by any name they like. They may not, however, demand that government agencies begin using their new names without a court order. This dual structure recognizes the reality that names serve multiple purposes, both private and public. Among the private purposes are self-expression and identity, which are served by a person's ability to change one's name at will in social and informal settings. Among the public purposes are identification and communication, which are served by the State's ability to tether one's name to a fixed identifier.
>
> The modern tendency toward use of government-issued identification in both private and public settings may shrink the field governed by the common law, but both common law and statutory processes have long coexisted with respect to names, as they do in other fields of law. Statutes obliging citizens to engage in some formality when they invoke government processes by applying for benefits or identification cards neither obliterate common-law usage nor are they driven by them.

*Id*. at 1254 (citations omitted). The Court determined that petitioning an Indiana court to obtain a statutory name change is an "especially light [burden] considering *Hauptly's* requirement that a court recognize by order any nonfraudulent name change." *Leone*, 933 N.E.2d at 1257-58. Further, the Court noted, "The paperwork required for a name change is similarly light." *Id*. at 1258 n.14.

[18] The simplicity of obtaining a name change, as discussed by the Supreme Court in *Leone* and *Hauptly*, is reflected in I.C. § 34-28-2-1, which broadly provides: "Except as provided in section 1.5 of this chapter, the circuit courts, superior courts, and probate courts in Indiana may change the names of natural persons

on application by petition." The only exceptions listed in the succeeding statutory section are if the person "is confined to a department of correction facility" or "is a lifetime sex or violent offender." I.C. § 34-28-2-1.5(b). Doe and R.A.C. do not fall into either of these specific categories.

[19] We agree with Petitioners that had the legislature intended to prohibit a third class of natural persons from being able to petition for a name change – namely, those who are not United States citizens – the above provisions make clear that the exception would be listed in section 1.5 of the chapter. Indeed, under the well-established doctrine of expressio unius est exclusio alterius, when items are specified or enumerated in a statute then, by implication, other items not so specified or enumerated are excluded. *See A.A. v. Eskenazi Health/Midtown CMHC*, 97 N.E.3d 606, 614 (Ind. 2018); *Campbell v. Eary*, 132 N.E.3d 413, 416 (Ind. Ct. App. 2019).

[20] Contrary to the plain language of sections 1 and 1.5 of the name change statutes, the trial court's interpretation of section 2.5 creates an entirely new category of individuals not entitled to petition for a name change. This categorical exclusion of non-U.S. citizens, per the trial court's interpretation, is hidden in subsection (a)(5) of I.C. § 34-28-2-2.5, a statute that sets out information that must be included in the petition.

[21] In *Resnover*, this court directly addressed I.C. § 34-28-2-2.5 with respect to a petitioner, Herron, who could not provide one of the enumerated items of information listed therein. There, Herron did not have a valid Indiana driver's

license (or identification card) number as required by subsection (a)(3) of the statute. In interpreting section 2.5, the majority read it in conjunction with its preceding section 2:[1]

> Seizing on the "if applicable" language of I.C. § 34-28-2-2, Herron asserts that this language should be implicitly read in conjunction with I.C. § 34-28-2-2.5, which is a subpart of I.C. § 34-28-2-2. As such, he maintains that a petitioner, who is at least seventeen years of age, should only have to include his driver's license number or identification card number with his petition for name change, if it is applicable. The State, as Amicus, opposes this interpretation, contending that it would "gut the statute and improperly make the requirements of subsection 2.5 merely discretionary." (Amicus Br. p. 9).
>
> The interrelationship between Indiana Code section 34-28-2-2 and its subsection 2.5, indicates that when filing a petition for name change, the petitioner must "if applicable, include the information required by section 2.5 of this chapter." *See* I.C. § 34-28-2-2. Mindful to give all words included in the statute their plain and ordinary meaning, we cannot but interpret the "if applicable" language to indicate that if the required documentation enumerated in subsection 2.5 cannot be

---

[1] I.C. § 34-28-2-2(a) provides:

The petition described in section 1 of this chapter must:

(1) *if applicable*, include the information required by section 2.5 of this chapter;

(2) in the case of a petition filed by a person described in section 2.5 of this chapter, be subscribed and sworn to (or affirmed):

   (A) under the penalties of perjury; and

   (B) before a notary public or other person authorized to administer oaths; and

(3) be filed with the circuit court, superior court, or probate court of the county in which the person resides.

(Emphasis supplied.). Subsections (b) and (c) address procedures related to changing the name of a minor.

submitted to the court, the petitioner is relieved from the necessity to produce the documents. Construing the statute otherwise would negate the "if applicable" language in I.C. § 34-28-2-2.

Although Section 2.5 propones the mandatory language that the petition "shall" include these documents, we are mindful that "[w]hen the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning." *United Rural Elec. Membership Corp. v. Indiana & Michigan Elec. Co.*, 549 N.E.2d 1019, 1022 (Ind. 1990). This is one of the rare instances where the Legislature intended a directory language….

In sum, today we hold that to effect a name change, a petitioner must submit with the petition for a name change the documents requested in I.C. § 34-28-2-2.5 – including a driver's license number or identification card number – if applicable. To be sure, although we have decided that the language of subsection 2.5 does not carry a mandate, but rather a directory intent, the trial court is still obliged to discern the absence of a fraudulent purpose prior to granting a petitioner's name change.

*Resnover*, 979 N.E.2d at 675-76.

[22] Judge Crone argued in dissent that the "if applicable" language of section I.C. § 34-28-2-2(a)(1) plainly "refers to the age requirement of Indiana Code Section 34-28-2-2.5(a) and not to the information required by that statute." *Resnover*, 979 N.E.2d at 677 (J. Crone, concurring in part and dissenting in part). In other words, he reasoned, if a petitioner is at least seventeen years old, then

section 2.5 *is applicable* and the petition *must* include all the information required by that statute.

[23]     While Judge Crone's analysis is appealing, we cannot say that the *Resnover* majority's opposing interpretation of the statute is unreasonable. And adopting *Resonver's* construction of I.C. § 34-28-2-2.5(a), which we do, allows us to avoid addressing the constitutional questions that arise if United States citizenship is read to be a (veiled) requirement for petitioning for a name change.

[24]     As set out in full above, I.C. § 34-28-2-2.5(a) provides a list of information to be submitted with a name change petition for an individual who is at least seventeen years of age. We interpret this provision as requiring submission of the enumerated information whenever possible. Where a petitioner is unable to provide certain information, however, the petitioner is relieved from the necessity to produce it. For example, a homeless person is not precluded from seeking a name change simply because they cannot provide a current address as required by subsection (a)(2). Similarly, here, Petitioners are unable to provide proof that they are United States citizens. Therefore, they are absolved of providing such proof.

[25]     The absence of any of the information required by I.C. § 34-28-2-2.5(a) will certainly be apparent to the trial court upon review of the petition, and we encourage a petitioner to include in the petition an explanation of why he or she cannot provide certain information. For example, in this case, Doe's petition set out that he "is not a U.S. Citizen but was granted asylum in the

United States in 2015 because he is transgender and was granted permanent residency in 2016." *Appendix* at 19. A trial court, of course, should address any missing information at the hearing on the petition.

[26] Ultimately, the task of the trial court is to consider all the testimony, documentary evidence, and information before it, including any lack of information. As long as the petitioner, a natural person at least seventeen years old and not subject to the specific exclusions in I.C. § 34-28-2-1.5, establishes that the name change is not being sought for fraudulent purposes, the trial court is required to recognize the name change.[2] *See Hauptly*, 312 N.E.2d at 860; *see also Leone*, 933 N.E.2d at 1254.

[27] In this case, the trial court made abundantly clear its finding that Petitioners were each seeking a name change in good faith and not for fraudulent or unlawful purposes. The trial court indicated that it could easily grant the petitions if it were not for the citizenship requirement that it believed existed in subsection (a)(5) of I.C. § 34-28-2-2.5. Having concluded that the applicable statutes do not require United States citizenship in order to obtain a name

---

[2] There are also procedural notice and publication requirements set out in the name change statutes that are not at issue in this case. Here, the trial court properly sealed the records and waived the publication of notice requirements pursuant to Ind. Administrative Rule 9. *Cf. In re A.L.*, 81 N.E.3d 283, 291 (Ind. Ct. App 2017) (where transgender petitioner "established that publication of notice of his petition for a name change would create a significant risk of substantial harm to him[,] … the trial court should have granted his requests to seal the record and waive publication").

change, we remand with instructions for the trial court to grant Petitioners' respective petitions for a name change.

[28] Judgment reversed and remanded.

Robb, J. and Bradford, C.J., concur.